# EXHIBIT A

1

## LOUDOUN COUNTY CIRCUIT COURT OF VIRGINIA
## COUNTY OF LOUDOUN

Asad Sammi Niyaz

CASE NO: CL- *61937*

Plaintiff

Vs.

Bank of America
PO Box 5170
Simi Valley CA93062-5170

Country wide Home Loans, Inc
America's Wholesale Lender
4500 Park Granda MSN# SVB-314
Calabasas CA 91302-1613

BAC Home Loans Servicing LP
PO Box 650070
Dallas, TX 75265-0070

Reconstruct Company, NA, is a wholly-owned subsidiary of Bank of America
N.A 2380 Performance Drive, Richardson, TX 75082, Mail Stop: RGV-C4-450

MERS, Mortgage Electronic Registration System (MERS) 1818 Library Street,
Suite 300 Reston, VA 20190

Samuel I. White, PC,
5040    Corporate Woods Drive Suite 120 Virginia Beach VA 23462-6523.

Jon Doe 1-100, et al
Defendants

## EMERGENCY MOTION TO CNCEL  FORECLOSURE SALE,
## DISMISS ACTION FOR FAILURE OF JURISDICTION AND LACK
## OF STANDING, FRADULENT ACTIVIES BY SAMUEL I. WHITE,

# JULIE WEBB AND GRANTING STAY TO THE PLAINTIFF TILL THE REAL PARTY IN INTEREST SHOWS UP.

1.  Plaintiff, Samee Niyaz, Petioner in the above-styled action and move this Court to set aside the foreclosure sale date on the 11day of June, 2010, property of plaintiff, located at 20278 Glenrobin Terr Ashburn VA 20147 and as grounds therefore says that the BAC Home loans Servicing, LP, Reconstruct Company, NA, MERS, and Samuel I. White PC and Julie Webb committed a fraud [1]upon Plaintiff in that the BAC Home loans Servicing, LP, Reconstruct Company, NA, does not now and did not, at the time of the initiating the foreclosure proceedings, own the mortgage, the mortgage note, any security agreements, nor have the requisite power to represent the real party in interest, nor did the LENDERS/TRUSTEE allege facts in support thereof. Foreclosure Notice is attached as EXHIBIT- A. & EXHIBIT-B

2.  The Co borrower Imam Mehboob is out of country and will be back very soon.

3.  Plaintiff requested the Lender / Trustee and their attorney to cancel the sale and Plaintiff is willing to work out with the real party in interest to cover the default, but all these defendants are hiding the identity of the real creditors from the plaintiff.

4.  Plaintiff is unemployed at present and needs to make some arrangements but in spite of repeated requests the defendants are not willing to talk.

---

[1] Prepared fake, fabricated and illegal instruments/assignment in support of their Fraud, in misleading the court, hiding the true facts from the court, thus committing Fraud upon Court and on Plaintiff. Reconstruct Company, NA and Samuel I. White PC and Julie Webb who is wearing various hats with fake signature have fabricated the fake, fraudulent and illegal affidavits to justify their frauds.

5. Defendants are not providing the exact names, address and phone no of the investors[2], so that Plaintiff can work a suitable plan with them to settle this issue. Plaintiff was working with the **BAC Home Loans Servicing LP owned by** the Bank of America for the modification of loan under the HAMP and the servicer assured the plaintiffs but sent the foreclosure notice to the plaintiff. The true facts and consequent fraud perpetrated upon me by, BAC Home loans Servicing, LP, Reconstruct Company, NA, MERS, and Samuel I. White PC and Ms. Julie Webb is that they have attached the Fake[3], fabricated and illegal documents to support their fraud. These Fraudulent documents were prepared by the Company "Lender Processing Company" who is being investigated by the Federal Investigators, and LPS had admitted these acts of fraudulent documents in their annual report 10K filed with the Security Exchange Commission as per SEC file # 001-34005 dated 02/23/2010.

6. Defendants lack standing and are acting ultra-virus. Defendants reconstruct Company and Mr. SAMUEL I. White PC, has prepared the fraudulent affidavits which were signed by the Ms. JULIE WEBB, who is wearing the different hats for financial and nonfinancial institutions.

7. The judicial system requires lawyers as officers of the court to act always in a truthful manner. By submitting documents, falsifying in motions and justifying the frauds with the fake, fabricated and illegal assignments/affidavits, to the Court which Mr. Samuel I. White fabricated illegal assignments from MERS and others

---

[2] Investor is the real creditor on the plaintiff's loan, which these defendants are not disclosing to plaintiff.
[3] Julie Webb and Mr. Samuel I. White PC, prepared the fraudulent documents and are trying to steal the primary residence of the plaintiff.

to mislead the court and committed fraud upon the court intentionally and knowingly. Mr. Samuel I. White knew that these are fake, fraudulent and illegal assignments.

8. Ms. Julie Webb has signed one affidavit on 09/23/2009 where she signed as Assistant Secretary US Bank National Association and in Plaintiff's case she signed one affidavit on 07/30/2009 as Assistant Secretary of MERS which is a non-financial institution. In both of these affidavits her signatures are not identical and both of these affidavits were used by Mr. Samuel I. White in two of the foreclosures in Virginia, which is a fraud upon court and fraud upon the plaintiff. These two Fake, fabricated and illegal documents are attached as EXHIBIT –C and EXHIBIT-D

9. Mr. Samuel I. White is misleading the court and committing fraud upon court by justifying these frauds in foreclosures.

10. RECONTRUST Company NA, owned by the Bank of America and Mr. Samuel I. White both are named as substitute trustee to conduct these fraudulent foreclosures.

11. RECONSTRUST Company NA is not resident of Virginia and is a violation of Virginia UPL Opinion 198 approved by the Virginia Supreme Court. RECONSTRUST Company NA cannot be Trustee in Virginia.

12. Because the facts revealed by the exhibits attached to the defendant's complaint, in the defendant's notice of filing are inconsistent with defendant's allegations as to ownership of the subject note and mortgage, those allegations are neutralized

and defendant's complaint is rendered objectionable. Greenwald v. Triple D

Properties, Inc., 424 So.2d 185,187 (Fla. 4th DCA 1

## NO HUD COUNSELING NOTICE

13. Defendant failed to comply with the foreclosure prevention loan servicing

requirement imposed on defendant pursuant to the National Housing Act, 12

U.S.C. 1701x(c) (5) which requires all lenders servicing non-federally insured

home loans, including the defendant, to advise borrowers, including plaintiffs, of

any home ownership counseling defendant offers together with information about

counseling offered by the U.S. Department of Housing and Urban Development.

The U.S. Department of Housing and Urban Development has determined that 12

U.S.C. 1701x(c) (5) creates an affirmative legal duty on the part of the defendant

and defendant's non-compliance with the law's requirements is an actionable

event that makes the filing of this foreclosure premature based on a failure of a

statutory condition precedent to foreclosure which denies defendant's ability to

carry out this foreclosure.  Defendant cannot legally pursue foreclosure unless and

until defendant demonstrates compliance with 12 U.S.C. 1701x(c) (5).

## FAILURE OF CONTRACTUAL CONDITION PRECEDENTS
## NO NOTICE OF DEFAULT

13.      Defendant failed to provide to the plaintiffs with a Notice of Default and
Intent to accelerate as required by and/or that complies with Paragraph 22 of the
subject mortgage. As a result, Plaintiffs have been denied a good faith
opportunity, pursuant to the mortgage and the servicing obligations of the
defendant, to avoid acceleration and this foreclosure. Defendant just sent the

Foreclosure Notice on 05/29/2010 and fixed the foreclosure Sale date on 06/11/2010. (JUST 10 DAYS). Mail Tracking is attached as EXHIBIT-E.

## DEFENDANTS FAILED TO COMPLY WITH APPLICABLE POOLING AND SERVICING AGREEMENT LOAN SERVICING REQUIREMENTS

14.     Defendant failed to provide plaintiffs with legitimate and non-predatory access to the debt management and relief that must be made available to borrowers, pursuant to and in accordance with the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission that controls and applies to the subject mortgage loan.

15.     Defendant's non-compliance with the conditions precedent to foreclosure imposed on the defendants pursuant to the applicable pooling and servicing agreement **is an actionable event that makes the filing of foreclosure premature based on a failure of a contractual and/or equitable condition precedent to foreclosure which denies defendant's ability to carry out this foreclosure.**

    (a).   Plaintiffs assert that the special default loan servicing requirements contained in the subject pooling and servicing agreement, to be filed in pertinent part and which is on file at: http://www.secinfo.com , are incorporated into the terms of the mortgage contract between the parties as if written therein word for word and the plaintiffs are entitled to rely upon the servicing terms set out in that agreement.

    ( b).   Alternatively or additionally, the plaintiffs are third party beneficiaries of the defendant's pooling and servicing agreement **and entitled to enforce the special default servicing obligations of the defendants specified therein.**

    (c).   Defendants cannot legally pursue foreclosure **unless and until Defendants demonstrates compliance with the foreclosure prevention servicing imposed by the subject pooling and servicing agreement under which the defendants owns the subject mortgage loan.**

    (d).   The **defendants failed, refused or neglected to comply with prior to the commencement of this action with the servicing obligations specifically imposed on the defendants by the PSA in many particulars, including, but not limited to:**

                    1. Defendants **failed to service and administer the subject mortgage loan in compliance with all applicable federal state and local laws.**
                     2.Defendants **failed to service and administer the subject loan in accordance with the customary a usual standards of practice of mortgage lenders and servicers.**

3. Defendants **failed to extend to plaintiffs the opportunity and failed to permit a modification, waiver, forbearance or amendment of the terms of the subject loan or to in any way exercise the requisite judgment as is reasonably required pursuant to the PSA.**

(e). Defendant's **failure to meet the servicing obligations imposed by the PSA cause the filing by defendants of this foreclosure to be in premature, in bad faith and a breach by defendants of its obligation to plaintiffs implied in the mortgage contract and as specified in writing in the PSA, to act in good faith and to deal fairly with plaintiffs.**

(f). Instead, **Defendant's servicing failures as set forth herein render defendant's actions in filing this premature foreclosure to be in bad faith and not acceptable loan servicing under the written contracts between the parties which include the mortgage, the PSA incorporated therein or by which plaintiffs are third party beneficiaries thereof and the promissory note.**

(g). Defendants **intentionally failed to act in good faith or to deal fairly with these plaintiffs** by failing to follow the applicable standards of residential single family mortgage lending and servicing as described in these Affirmative Defenses thereby denying the Plaintiffs access to the residential mortgage lending and servicing protocols applicable to the subject note and mortgage.

## ILLEGAL CHARGES ADDED TO BALANCE

16. Defendants has charged and/or collected payments from Plaintiffs for attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, and other charges and advances, and predatory lending fees and charges that are not authorized by or in conformity with the terms of the subject note and mortgage or the **controlling pooling and servicing agreement which specifies the waiver of late payments and other collection charges as part of the forbearance and loan modification default loan servicing. Defendants wrongfully added and continues to unilaterally add these illegal charges to the balance Plaintiff claims is due and owing under the subject note and mortgage.**

## FAILURE OF GOOD FAITH AND FAIR DEALING: UNFAIR AND   UNACCEPTABLE LOAN SERVICING

17.         Defendants **intentionally failed to act in good faith or to deal fairly with the Plaintiffs by failing to follow the applicable standards of residential single family mortgage servicing as described in these Affirmative Defenses thereby denying Plaintiff's access to the residential mortgage servicing protocols applicable to the subject note and mortgage**

## UNCLEAN HANDS

18.         The Defendants comes to court with unclean hands and is prohibited by reason thereof from obtaining the equitable relief of foreclosure from this Court. The Defendant's unclean hands result from the Defendant's improvident and predatory intentional failure to comply with material terms of the mortgage and note; the failure to comply with the default loan servicing requirements that apply to this loan, all as described herein above.

19.         **As a matter of equity, this Court should refuse to foreclose this mortgage because acceleration of the note would be inequitable, unjust, and the circumstances of this case render acceleration unconscionable.** This court should refuse the acceleration and deny foreclosure because Defendants has waived the right to acceleration or is stopped from doing so because of misleading conduct and unfulfilled contractual and equitable conditions precedent.

20.         WHEREFORE, Plaintiffs demands the Defendant's complaint be dismissed **with prejudice and for fraud on the court**, and for their attorney's fees and costs and for all other relief to which this Court finds Plaintiffs entitled.

## DEFENDANTS LACK STANDING

21.         Defendants are not the true owner of the claim sued upon, is not the real party in interest and is not shown to be authorized to bring this foreclosure action.

# COUNTERCLAIMS

## DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action for declaratory and injunctive relief against the Defendants.

2. **Defendants failed to provide Plaintiffs with a Notice of Default** and Intent to

accelerate as required by and/or that complies with **Paragraph 22 of the subject mortgage.**

3. Defendants failed to comply with the foreclosure prevention loan servicing requirement imposed on Defendants pursuant to the National Housing Act, 12 U.S.C. 1701x(c) (5) which requires all lenders servicing non-federally insured home loans, including the Defendants, to advise borrowers, including Plaintiffs, of any home ownership counseling Defendants offers together with information about counseling offered by the U.S. Department of Housing and Urban Development.

4. Defendants cannot legally pursue foreclosure unless and until Defendants demonstrates compliance with 12 U.S.C. 1701x(c) (5).

5. Defendants failed to provide Plaintiffs with legitimate and non-predatory access to the debt management and relief that must be made available to borrowers, Plaintiffs pursuant to and **in accordance with the Pooling and Servicing Agreement filed by the Defendants with the Securities and Exchange Commission that controls and applies to the subject mortgage loan.**

6. Defendant's non-compliance with the conditions precedent to foreclosure imposed on the Defendants **pursuant to the applicable pooling and servicing agreement is an actionable event that makes the filing of this foreclosure premature based on a failure of a contractual and/or equitable condition precedent to foreclosure which denies Defendants ability to carry out this foreclosure.**

7. The **special default loan servicing requirements contained in the subject pooling and servicing agreement are incorporated into the terms of the mortgage contract between the parties as if written therein word for word and the Plaintiffs are entitled to rely upon the servicing terms set out in that agreement.**

8. Plaintiffs are third party beneficiaries of the **Defendants' pooling and servicing agreement and entitled to enforce the special default servicing obligations of the Defendants specified therein.**

9. Defendants cannot legally pursue foreclosure unless and **until Defendants demonstrate compliance with the foreclosure prevention servicing imposed by the subject pooling and servicing agreement under which the Defendants own the subject mortgage loan.**

10. The section of the Pooling and Servicing Agreement (PSA) is a public document on file and online at http://www.secinfo.com and the entire pooling and servicing agreement is incorporated herein.

11. The Defendants failed, refused or neglected to comply, prior to the commencement of this action, with the servicing obligations **specifically imposed on the Defendants by the PSA in many particulars, including, but not limited to:**

a. Defendants failed to service and administer the subject mortgage loan in compliance with all applicable federal state and local laws.

b. Defendants failed to service and administer the subject loan in accordance with customary a usual standards of practice of mortgage lenders and servicers.

c. Defendants failed to extend to Plaintiffs the opportunity and failed to permit a modification, waiver, forbearance or amendment of the terms of the subject loan or to in any way exercise the requisite judgment as is reasonably required pursuant to the PSA.

12. The defendants have no right to pursue this foreclosure because the defendants have failed to provide servicing of this residential mortgage loan in accordance with the controlling servicing requirements prior to filing this foreclosure action.

13. Plaintiffs have **a right to receive foreclosure prevention loan servicing from the defendants before the commencement or initiation of foreclosure action.**

14. Plaintiffs are in doubt regarding their rights and status as borrowers **under the National Housing Act, HAMP and also under the Pooling and Servicing Agreement filed by the defendant with the Securities and Exchange Commission.** Plaintiffs are now subject to foreclosure action by reason of the above described illegal acts and omissions of the Defendants

15. Plaintiffs are being denied and deprived by defendants of their right to access the required troubled mortgage loan servicing imposed on the defendants and applicable to the **subject mortgage loan by the National Housing Act and also under the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission.**

16. Plaintiffs are **being illegally subjected by the Defendants to foreclosure action, being forced to defend the same and they are being charged illegal predatory court costs and related fees, and attorney fees. Plaintiffs are having their credit slandered and negatively affected, all of which constitutes irreparable harm to Plaintiffs for the purpose of injunctive relief.**

17. As a proximate result of the Defendant's unlawful actions set forth herein,

Plaintiffs **continue to suffer the irreparable harm described above for which monetary compensation is inadequate.**

18. Plaintiffs have a right to access the foreclosure prevention servicing prescribed by the **National Housing Act, HAMP and under the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission which right is being denied to them by the Plaintiff.**

19. These **acts are and were wrongful and predatory acts by the defendants, through its predecessor in interest, and were intentional and deceptive.**

20. There is a substantial likelihood that Plaintiffs will prevail on the merits of their counterclaims.

WHEREFORE, Plaintiffs request the Court dismiss the Defendant's complaint with prejudice, enter a judgment declaring that the defendants are legally obligated to provide the **Plaintiffs with access to the special troubled loan servicing prescribed by the National Housing Act and under the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission** and **enjoining the defendants from charging foreclosure fees and costs and from commencing or pursuing foreclosure until such servicing is provided to this plaintiffs, for attorney's fees and for all other relief to which Plaintiffs prove themselves entitled.**

# ILLEGAL CONSUMER COLLECTION

PLAINTIFFS reassert and reallege, as their Statement of Facts, paragraphs 1 through 20, inclusive as set out in Count I of these counterclaims.

22. Plaintiffs are consumers and the obligation between the parties which is the debt owned pursuant to the subject note and mortgage is a consumer debt.

23. Defendants have engaged in consumer collection conduct which amounts to a violation as set out below and Plaintiffs, as a proximate result thereof, have sustained economic damages for which the Plaintiffs are entitled to compensation from the defendants.

24. Defendant's collection activities described herein violated Federal and State Laws, that the Defendants are claiming, attempting and threatening to collect and enforce this consumer mortgage debt by this foreclosure action when the defendants knows that the right to pursue foreclosure does not exist.

25. These acts were wrongful and predatory acts by the defendants, through its predecessor in interest, and were intentional and deceptive.

26. Additionally, the reason the defendants do not have a legal right to pursue this foreclosure is because the defendants has failed to first comply with the foreclosure prevention loan servicing obligations imposed on defendants prescribed by the National Housing Act and under the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission.

27. These foreclosure prevention loan servicing obligations are imposed on the defendants pursuant to the National Housing Act, 12 U.S.C. Section 1710(a) and the Pooling and Servicing Agreement filed by the defendants with the Securities and Exchange Commission.

28. The **defendants are claiming, attempting and threatening to collect fees and charges including, but not limited to, attorney fees, legal fees, foreclosure costs, late charges, property inspection fees, title search expenses, filing fees, broker price opinions, appraisal fees, and other charges and advances, and predatory lending fees and charges all of which are not authorized by or in conformity with the terms of the subject note and mortgage.**

29. **Defendants wrongfully added and continues to unilaterally add these illegal charges to the balance defendants claims is due and owing under the subject note and mortgage.**

30. Defendants continues to claim, attempt, and threaten to enforce this mortgage debt through acceleration and foreclosure **when the defendants knows that such conduct is in bad faith because the defendants have charged and collected money from plaintiffs that they did not owe; forced plaintiffs into deepening indebtedness and then failed to meet the contractual and statutory conditions precedent before filing this action to collect this consumer debt.**

31. As a result of the defendant's failure to properly service this mortgage loan before filing this foreclosure action, **Plaintiffs have been damaged and Plaintiffs seek to recover their actual or statutory damages from the defendants.**

WHEREFORE, Plaintiffs demand the defendant's complaint be dismissed with prejudice, for an award of damages in plaintiffs' favor and against the defendants for their actual or statutory damages whichever is greater and for their attorney's fees and costs and for all other relief to which this Court finds plaintiffs entitled.

WHEREFORE, Plaintiffs demand the Defendant's **complaint be dismissed with prejudice for failure to state a cause of action and for fraud on the court, and for judgment against the defendants for their damages, for an award** of attorney's fees and costs and for all other relief to which this Court finds plaintiffs entitled.

WHEREFORE, Plaintiff pray that this Honorable Court will cancel the sale date of plaintiff's primary residence, deny any motion or petition for eviction on the grounds of lack of jurisdiction over the parties or the subject property, **order for stay ,** and grant such other and further relief and stay as the court may deem just and proper till the time plaintiff resolve this issue with the real lender. **Loan has been securitized and the real party in interest is the trustee of securitization trust and not the servicing agent, BAC  Home Loans Servicing, LP**

Granting the plaintiff's **request for stay** simply assures plaintiff that when the party or any party, who is actually holder in due course--- shows up at some time in future and is able to provide evidence that they are  the TRUE HOLDER in due course of obligation, then Plaintiff  at least still have the home, with which to negotiate a "CLOUD FREE" set of terms and title with that party,

otherwise when the day comes I would be struck with still owing the obligation

but not having title or possession of subject property.

WHEREFORE, Plaintiff pray that this Honorable Court, to refer the

case to Virginia State Bar for the fraudulent acts of the Mr. Samuel I. White PC,

so that Mr. Samuel I. White PC should not repeat these acts of FRAUD UPON

COURT.

PLAINTIFF HEREBY CERTIFY that a true and correct copy was sent

by certified return receipt mail to the defendants on 06/02/2010.

Bank of America
PO Box 5170
Simi Valley CA93062-5170

Country wide Home Loans, Inc
America's Wholesale Lender
4500 Park Granda MSN# SVB-314
Calabasas CA 91302-1613

BAC Home Loans Servicing LP
PO Box 650070
Dallas, TX 75265-0070

Reconstruct Company, NA, is a wholly-owned subsidiary of Bank of America,
N.A 2380 Performance Drive, Richardson, TX 75082, and Mail Stop: RGV-C4-450

MERS, Mortgage Electronic Registration System (MERS) 1818 Library Street,
Suite 300 Reston, VA 20190

Samuel I. White, PC, 5040 Corporate Woods Drive Suite 120, Virginia
Beach, VA 23462-6523.

Respectfully Submitted

Asad Sammi Niyaz  *Asad S. Niyaz*   Date _06/02/2010_

20278 Glenrobin Terr, Ashburn VA 20147

Phone Number    (571) 275-0831

## NOTARY'S VERIFICATION

County _Loudon_

State _VA_

On this _2_ day of _June_, _2010_ personally came before me the above named Affiant, who proved his identity to me to my satisfaction, and acknowledged his signature on this affidavit in my presence and stated that he did so with full understanding.
Executed on this _2_ day of _June 2010_, at _Ashburn_ _VA_

My Commission Expires on _10-31-13_     Notary Public, State of Virginia

SEAL

DARRYL J. GOLE
Notary Public
Commonwealth of Virginia
369487
My Commission Expires Oct 31, 2013

# DEED OF TRUST

MERS act of assigning the mortgage instrument was in-[  ]it held no beneficial interest in the mortgage instrument for two reasons: 1) a securit[  ]trument, apart from the promissory note giving rise to the debt has no value because there is no debt by which it secures payment; and 2) MERS has no beneficial interest in the mortgage instrument that it could assign. In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.

Deed of Trust is registered in County Land Record but promissory note is not, Not has been separated from mortgage, When note is separated from the mortgage, the mortgage becomes unenforceable by definition, and when mortgage is unenforceable, the foreclosure is void and a cloud on the title exists in the presence of the court judgment to the contrary

```
20070130-0007790
Loudoun County, VA              Pgs: 16
01/30/2007 12:25:43PM
Gary M. Clemens , Clerk
```

in LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769 (N.Y. Supp. 2006), the Court denied a foreclosure action by an assignee of MERS on the grounds that MERS itself had no ownership interest in the underlying note and mortgage.

In the case of In re Mitchell, Case No. BK-S-07-16226-LBR (Bankr.Nev., 2009), ." (At page 9) The Court found that MERS has no ownership interest in the promissory note. The Court found that though MERS attempts to make it appear as though it is a beneficiary of the mortgage, in fact is not a beneficiary. The Court stated "But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck."

COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
YOLANDA SMITH
AMERICA'S WHOLESALE LENDER

6230 OLD DOBBIN LANE SUITE
140
COLUMBIA
MD 21045

RPC/Tax Map Reference #/Parcel I.D. #:

No Corpus, No Trust,(1). There must be clear intention to create a trust(2). There must be a Truster/Granter to create Trust (3). there must be a Trust Corpus or assets( 4. there must be duties assigned to Trustee (5). There must be ASCERTAINED or ASERTAINABLE, beneficiaries 0r put another way, there is no such thing as a "STRAW" or "nominal" beneficiary and, without ASERTAINED or ASCERTAINABLE Beneficiaries the trust Instrument is VOID.( 6). Without Promissory note (Asset & Corpus) there can not be a valid trust and without a valid Trust there is no longer need for any security called Deed of Trust. Corpus of the Trust is not there. (7). The Deed of Trust is a Trust Instrument and as such must meet certain criteria to be valid. SO IF THERE IS NO CORPUS NO TRUST

MERS Mortgage Identification Number

[Space Above This Line For Recording Data]

061077DCM                00015705289201007
[Escrow/Closing #]                 [Doc ID #]

**DEED OF TRUST**
MIN 1000157-0007707930-5

The Real Party in Interest (and the real amount of principal due, if any) is in a state of flux hidden by obscure, hidden or "confidential documentation. Don't make it your problem to unravel it.

The Promissory Note and the mortgage must be together OR no Foreclosure can take place, Follow the Title and UCC

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by
IMAM,MEHBOOB , MARRIED and SAMEE NIAZ

as Borrower (trustor), to
SAMUEL I WHITE
130 BUSINESS PARK DRIVE, VIRGINIA, VA 23462
N/A
N/A
as Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

Put one name on the note and another on the DOT as beneficiary (particularly when the beneficiary is MERS and therefore an undisclosed principal) and **you have direct evidence that the intention of the parties was to separate the note from the mortgage. The burden of proof thus shifts to the alleged creditor.**

Mr. Samuel I. White PC and RECONTRUST Company NA, a subsidiary of Bank of America, fabricated, fake and illegal assignments/ affidavits.

These were signed by Ms. Julie Webb, who is wearing too many hats for the financial and nonfinancial institutions and her signatures are not identical.

Mr. Samuel I. White PC has used these fake assignments in two of the foreclosures in Virginia

a). Used in Foreclosure Case of Mr. ASHISH MEHRA (Ref: TS No. 090127238/CONV & SIWPC # 0102326509 Fair Fax Virginia) whose Foreclosure sale was on 04/05/2010, which was cancelled when these fraudulent, fake and illegal assignments were brought to the knowledge of these foreclosure mills.

b).    Used in plaintiff's case,  and is using the same when he sent foreclosure notice on 05/29/2010 ( Ref: TS # 09-0092599, Ashburn Virginia)
Mr. Samuel I. White PC used these fake affidavits intentionally, knowingly when he knew these were fake and illegal. THIS IS A FRAUD UPON COURT AND UPON BORROWERS??

Section: ____1____  Block: __7__  Lot: __15__  Unit: ____

MERS CONV/VA Deed of Trust-VA
2006A-VA (12/06)(d/i)              Page 1 of 12          FNMA/FHLMC Form 3047 1/01

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

* 2 3 9 9 1 *          * 1 5 7 0 5 2 8 9 2 0 0 0 0 0 2 0 0 6 A *

24 (SIGMA)

**[annotation top right:]** The splitting of the note and the mortgage creates an immediate and fatal flaw in title, making mortgage unenforceable, when mortgage is unenforceable the foreclosure is void and a cloud on title exists in the presence of the court judgment to the contrary
Vacating Judgment s procured by Fraud and all the other basic BLACK LETTER LAW flaws in the securitization of loans

**[annotation left:]** MERS act of assigning the mortgage instrument was invalid as it held no beneficial interest in the mortgage instrument for two reasons: 1) a security instrument, apart from the promissory note giving rise to the debt has no value because there is no debt by which it secures payment; and 2) MERS had no beneficial interest in the mortgage instrument that it could assign.
In Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 274, 21 LEd. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

DEFINITIONS

DOC ID #: 00015705289201007

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated JANUARY 26, 2007 , together with all Riders to this document.

(B) "**Borrower**" is
IMAM, MEHBOOB, AND SAMEE NIAZ

**[annotation box:]** "Under what section of law does MERS, if named 'nominee' have the authority to assign and/or discharge the mortgage?"; "Is a nominee like a power of attorney for the lender?"; and, "How ought the mortgage be recorded in the clerk's office?" MERS tends to argue it is an actual mortgagee or assignee when it brings foreclosure actions; but, when sued in cases alleging fraud, deceptive practices, or other statutory consumer protection claims associated with loans registered on its system, MERS argues it is merely an agent without exposure to liability.

**[annotation right:]** MERS(Mortgage Electronic Registration System Inc. is beneficiary on Deed of Trust, this makes Deed of Trust unlawful. MERS can not be holder in due course, MERS is a break in the chain of Title and is Deed of Trust is void

*MERS' role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool*

*Note especially the reference to creating two entities to exercise collection and foreclosure instead of one thus reinforcing the argument of financial double jeopardy. The MERS deed would therefore be void. Thus there would be no security, probably no note and maybe no obligation either if the "Lender" was paid in full at closing by a third party in the securitization chain or if the derivative products were sold and...*

Borrower is the trustor under this Security Instrument.

(C) "**Lender**" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

(D) "**Trustee**" is
SAMUEL I WHITE
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is
130 BUSINESS PARK DRIVE, VIRGINIA, VA 23462
"Trustee" is
N/A
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is
N/A

(E) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "**Note**" means the promissory note signed by Borrower and dated JANUARY 26, 2007 . The Note states that Borrower owes Lender
THREE HUNDRED THIRTY FIVE THOUSAND TWO HUNDRED and 00/100

Dollars (U.S. $ 335,200.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2037 . The interest rate stated in the Note is SIX & FIVE-EIGHTHS percent ( 6.625 %). If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

**[annotation right:]** A beneficiary is not a beneficiary unless they are a creditor, MERS in this case is not a creditor???? MERS never received even a single penny from the borrower's payment, MERS can not be beneficiary

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider            ☒ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider    ☒ Other(s) [specify]
                                                         0

**[annotation right:]** MERS as beneficiary on Deed of Trust is a Portal between two Universes of Commercial Law(Negotiable instrument) and Mortgage Law, There is NO Trust, No Corpus, No Trust

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**[annotation right:]** Courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.I n Landmark National Bank v. Kesler, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of MERS in relation to the, that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan.

• MERS CONV/VA Deed of Trust-VA
2006A-VA (12/06)

Page 2 of 12

FNMA/FHLMC Form 3047 1/01

**[annotation bottom left:]** These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

**There is no reason for MERS to exist EXCEPT to hide transactions under a veil of a "private" association of members, sidestepping the recording statues of every state and misleading the courts, Lawyers and homeowners around the state.**

Put one name on the note and another on the DOT as beneficiary (particularly when the beneficiary is MERS and therefore an undisclosed principal) and **you have direct evidence that the intention of the parties was to separate the note from the mortgage. The burden of proof thus shifts to the alleged creditor.**

DOC ID #: 00015705289201007

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This beneficiary of this Security Instrument is MERS solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY          of          LOUDOUN
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**MERS as beneficiary or mortgagee is the same as designating nobody at all.**

The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." **Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. App. 2009).**1. The splitting of the note and the mortgage creates an immediate and fatal flaw in title, making mortgage unenforceable. MERS name on the Deed of Trust makes Deed of Trust "VOID" and Note "UNSECURED" factually, the note and DOT are split and according to the Restatement 3rd, they can never be put back together again. The note, while still enforceable as an instrument by itself, is no longer secured by an encumbrance on the property

Virginia 20147-2371 ("Property Address"):
[Zip Code]

**The point is that designating MERS as beneficiary or mortgagee is the same as designating nobody at all.**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to

MERS CONV/VA Deed of Trust-VA
2006A-VA (12/06)          Page 3 of 12          FNMA/FHLMC Form 3047 1/01

**"The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation.** The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. App. 2009).**

MERS as beneficiary on Deed of Trust is a Portal between two Universes of Commercial Law (Negotiable Instruments) and Mortgage Law, There is NO Trust, No Corpus, No Trust. **The customized form of Mortgage deed utilized by the Mortgage Electronic Registrations Systems Inc., (MERS), Paragraph C and the grantee clause in particular, is not entitled to any of the statutory mortgage protections provided. A "Nominee" "Mortgagee" is simply not entitled to the statutory benefits. Those provisions are strictly construed against MERS putative conveyance since the statutory provisions are in derogation of common law. For example, MERS mortgage deeds have two entities exercising the same statutory foreclosure powers**

**These are not the Borrower's signatures**

**These have been fabricated by the lender and the Trustee**

**The deed of trust is merely an incident of the obligation and has no existence apart from it. Good fellow v Good fellow (1933) 219 C 548, 27 P2d 898; Adler v Sargent (1895) 109 C 42, 41 P 799; Turner v Gosden (1932) 121 CA 20, 8 P2d 505.**

Just because the document SAYS that an entity is the beneficiary doesn't mean that is either true or dispositive. **It is merely an allegation that is subject to the test of judicial process.** The courts look to" Substance over form" rather than the other way around. Otherwise ANYONE could come in with paperwork of any kind and whether it was right or not, make a successful claim against you.

DOC ID #: 00015705289201007

**(1) MERS' appearance on the deed of trust renders the mortgage deed or deed of trust invalid**

**(2).A. MERS' appearance on the deed of trust renders the mortgage deed or deed of trust VOID**

**This means there is no security instrument even if the obligation is still outstanding**

Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow

[Note that this does not include a nominee like MERS. There is a reason for that. The legislature intended to create certainty in contracts and actions on contracts. Using a nominee immediately creates the question of agency. The question of agency immediately raises the question of "who is the principal?" As long as that question exists, this statute is violated. If this statue is violated the deed of trust is void.]

[Note also that without an accounting for third party payments to the creditor in the securitization chain who has succeeded to the position of beneficiary BECAUSE THE SUCCESSION IS SHOWN IN THE COUNTY RECORDS, is voidable because the amount is incorrect, which is a question of fact that must be judicially resolved, which is why NO NON-JUDICIAL sale of securitized property is appropriate.]
A creditor is not a creditor unless they are owed something. A beneficiary is not a beneficiary unless they are a creditor. In the case of a mortgage note, a beneficiary is not a creditor unless it is the obligee on the note (i.e., the one to whom the note directs payment). There is no escaping this logic. The beneficiary must be an obligee of the secured obligation (usually the payee of a note), because otherwise the deed of trust in its favor is meaningless. Watkins v. Bryant (1891) 91 C 492, 27 P 775; Nagle v Macy (1858) 9 C 426

**The point is that designating MERS as beneficiary or mortgagee is the same as designating nobody at all.**

* MERS CONV/VA Deed of Trust-VA
2006A-VA (12/06)                    Page 4 of 12                    FNMA/FHLMC Form 3047 1/01

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 00015705289201007

account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 0001570528920100007

such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 00015705289201007

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction,

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 00015705289201007

or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 0001570528920100 7

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 00015705289201007

which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee**

• MERS CONVIVA Deed of Trust-VA
2006A-VA (12/06)                    Page 10 of 12                    FNMA/FHLMC Form 3047 1/01



These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

DOC ID #: 00015705289201007

may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

_____ (Seal)
TMAN, MEHBOOB                    -Borrower

_____ (Seal)
SAMSE NIAZ                       -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

DOC ID #: 00015705289201007

STATE OF VIRGINIA, _____ FAIRFAX _____

County, _____ ANNANDALE _____ (city or town), ss:

The foregoing instrument was acknowledged before me this _26th day of January 2007_ by
_MEHBOOB RASH and JAMES DIAZ_

_____
_____
_____
_____
_____

My Commission Expires: _____        Notary Public _____

Borrower's fail to understand how this Notary has been notarizing the Fake and fabricated signatures??????

Prepared by: YOLANDA SMITH

**AMERICA'S WHOLESALE LENDER**

Branch #: 0009185
6230 OLD DOBBIN LANE SUITE 140
COLUMBIA, MD 21045
Phone: (866)518-5670
Br Fax No.: (877)805-8671

DATE:        01/26/2007
CASE #:
DOC ID #:    00015705289201007
BORROWER: IMAM MEHBOOB
PROPERTY ADDRESS: 20278 GLENROBIN TER
              ASHBURN, VA 20147-2371

### LEGAL DESCRIPTION EXHIBIT A

All that certain lot or parcel of land situate in the County of Loudoun, Commonwealth of Virginia, and being more particularly described as follows:Being known and designated as Lot 15 in Block 7, Section 1 in a subdivision known as Ridges as Ashburn as per plat thereof recorded in Plat Book 1420 at plat 1547 among the Land Records of Loudoun County, Virginia.

FHA/VA/CONV
Legal Description Exhibit A
2C4D4-XX (04/03)(c)





13

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:

Prepared By:
YOLANDA SMITH
AMERICA'S WHOLESALE LENDER


6230 OLD DOBBIN LANE SUITE
140
COLUMBIA
MD 21045

<table>
<tr><td>061077DCM</td><td>00015705289201007</td></tr>
<tr><td>[Escrow/Closing #]</td><td>[Doc ID #]</td></tr>
</table>

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-SIXTH    day of
JANUARY, 2007     , and is incorporated into and shall be deemed to amend and supplement
the, Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
20278 GLENROBIN TER
ASHBURN, VA 20147-2371
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
-7R (0405)   CHL (06/04)(d)        Page 1 of 3        Initials: 
VMP Mortgage Solutions, Inc. (800)521-7291        Form 3150 1/01

These are not the
Borrower's signatures

These have been
fabricated by the lender
and the Trustee



* 23991 *

* 1 5 7 0 5 2 8 9 2 0 0 0 0 2 0 0 7 R *

14

DOC ID #: 00015705289201007

other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
RIDGES AT ASHBURN

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the

-7R (0405)      CHL (06/04)      Page 2 of 3                    Form 3150 1/01

Initials:

These are not the
Borrower's signatures

These have been
fabricated by the lender
and the Trustee

\ S

DOC ID #: 0001570528920l007

express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.



_____ (Seal)
IMAM, MEHBOOB                    - Borrower

_____ (Seal)
SAMEA NIAZ                       - Borrower

These are not the Borrower's signatures

These have been fabricated by the lender and the Trustee

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

-7R (0405)    CHL (06/04)        Page 3 of 3              Form 3150  1/01

16

# MERS

# SERVICER

# IDENTIFICATION

MERS® Servicer Identification System - Results

https://www.mers-servicerid.org/sis/search

# MERS ServicerID

## Process Loans, Not Paperwork™

www.mers-servicerid.org

**1 record matched your search:**

MIN: 1000157-0007707930-5    Note Date: 01/26/2007    MIN Status: Active

Servicer:    BAC Home Loans Servicing, LP
             Simi Valley, CA    Phone: (800) 669-6607

Return to Search

For more Information about MERS please go to www.mersinc.org

Copyright © 2006 by MERSCORP, Inc.

> Note was signed om
> 01/26/2007

> Servicer is BAC
> Homeloan Servicing,
> LP



Plaintiff does not know who owns the loan and Promissory Note, Countrywide was the Original lender who sold the Plaintiff's loan multitimes as per Security Exchange Commission.

5/29/2010 7:23 PM

Member Record

file:///C:/Documents%20and%20Settings/Raja/My%20Documents/Member%20SAMMIE.htm



Corporate Name:        BAC Home Loans Servicing, LP
Address:               1800 Tapo Canyon Road Mail ID #CA6-914-01-43
City,State,Zip:        Simi Valley, CA 93063
Toll Free Number:      (800) 669-2443
Direct Number:         (800) 669-6607
Fax Number:            (805) 577-4590
Primary Contact:       MERS Department
Website:               http://countrywide.com
Member Org ID:         1000157
Lines Of Business:     Originator, Servicer, Subservicer, Investor, Document Custodian, MERS 1-2-3
eRegistry Participant: Yes
eDelivery Participant: Yes

                       Back To Member Search

Copyright© 2002 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks
or registered trademarks and are the property of
their respective holders.

Plaintiff called MERS at their office in RESTON and their reply is talk to the servicer, which plaintiff did, but no one is listening?????

Servicer is BAC Home Loans Servicing LP & they do not own the Plaintiffs loan

Plaintiff called these phone numbers multitimes and no one is willing to help

Email shows Countrywide

# EXHIBIT-A

# FORECLOSURE NOTICE

**DEFENDANTS FAILED TO COMPLY WITH AP___ ___ABLE POOLINGANDSERVICING AGREEMENT LO___ ___ERVICING REQUIREMENTS, as per Pooling and Servicing Agreement defendants need to send to Plaintiff the default notice 30 days before the fore closure Notice. Plaintiff was given only 10 days??? Defendants failed to extend to plaintiffs the opportunity and failed to permit a modification, waiver, forbearance or amendment of the terms of the subject loan or to in any way exercise the requisite judgment as is reasonably required pursuant to the PSA.**

NO DEFAULT NOTICE WAS SENT TO BORROWER, FORECLOSURE NOTICE WAS SENT on 05/26/2010 which was received by borrower on 05/29/2010, Borrower was given only 10 DAYS, Advertisement in the Newspaper was already Published on 05/28/2010

CERTIFIED MAIL RETURN RECEIPT REQUESTED

RE:   Notice of Foreclosure Sale
Property Address: 20278 GLENROBIN TER, ASHBURN, VA 20147-2371
TS#:   09 -0092599

Dear Sir/Madam:

Enclosed is a copy of the Notice of Trustee's Sale for the foreclosure sale scheduled for th referenced property.

This notice is an attempt to collect a debt, and any information obtained will be used for that purp

ReconTrust was substituted as Trustee, which is a VIOLATION of Virginia UPL Opinion 198 approved by the Supreme Court of VIRGINIA

RECONTRUST cannot be TRUSTEE????

SAMUEL I. WHITE PC is involved in the fabrication of Fake, fabricated and illegal assignment to justify his FRADULENT FORECLOSURE, Which is a FRAUD, so SAMUEL I. WHITE PC cannot be a TRUSTEE as he cannot do his FIDUCIARY DUTIES towards the Borrower

Very truly yours

RECONTRUST COMPANY, N.A  AND SAMUEL I. WHITE, P.C.
Substitute Trustee(s)

Plaintiffs assert that the special default loan servicing requirements contained in the subject pooling and servicing agreement, to be filed in pertinent part and which is on file at: http://www.secinfo.com , are incorporated into the terms of the mortgage contract between the parties as if written therein word for word and the plaintiffs are entitled to rely upon the servicing terms set out in that agreement.

Enclosure

1. Defendant failed to comply with the foreclosure prevention loan servicing requirement imposed on defendant pursuant to the National Housing Act, 12 U.S.C. 1701x(c) (5) which requires all lenders servicing non-federally insured home loans, including the defendant, to advise borrowers, including plaintiffs, of any home ownership counseling defendant offers together with information about counseling offered by the U.S. Department of Housing and Urban Development. The U.S. Department of Housing and Urban Development has determined that 12 U.S.C. 1701x(c) (5) creates an affirmative legal duty on the part of the defendant and defendant's non-compliance with the law's requirements is an actionable event that makes the filing of this foreclosure premature based on a failure of a statutory condition precedent to foreclosure which denies defendant's ability to carry out this foreclosure. Defendant cannot legally pursue foreclosure unless and until defendant demonstrates compliance with 12 U.S.C. 1701x(c) (5).
2. Defendant failed to provide to the plaintiffs with a Notice of Default and Intent to accelerate as required by and/or that complies with Paragraph 22 of the subject mortgage. As a result, Plaintiffs have been denied a good faith opportunity, pursuant to the mortgage and the servicing obligations of the defendant, to avoid acceleration and this foreclosure. Defendant just sent the Foreclosure Notice on 05/29/2010 and fixed the foreclosure Sale date on 06/11/2010. (JUST 10 DAYS)

## DEFENDANTS FAILED TO COMPLY WITH APPLICABLE POOLINGANDSERVICING AGREEMENT LOAN SERVICING REQUIREMENTS

Plaintiffs assert that the special default loan servicing requirements contained in the subject pooling and servicing agreement, to be filed in pertinent part and which is on file at: http://www.secinfo.com , are incorporated into the terms of the mortgage contract between the parties as if written therein word for word and the plaintiffs are entitled to rely upon the servicing terms set out in that agreement.

Defendants cannot legally pursue foreclosure **unless and until Defendants demonstrates compliance with the foreclosure prevention servicing imposed by the subject pooling and servicing agreement under which the defendants owns the subject mortgage loan.**

**A beneficiary is not a beneficiary unless they are a creditor. MERS is not creditor so MERS can not be beneficiary**

RS(Mortgage Electronic Registration System Inc ~beneficiary on Deed of Trust, this makes Deed of Trust unlawful. MERS can not be holder in due course, MERS is a break in the chain of Title and is Deed of Trust is void
**MERS' role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool**
**MERS has no authority to appoint Substitute Trustee???**

The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." **Bellistri v. Ocwen Loan Servicing, LLC, 284 S. W.3d 619, 623 (Mo. App. 2009).** **All the Deed of Trusts on which MERS is named as BENEFICIARY, are VOID, and note is unsecured.**

RECONTRUST is not resident of Virginia and is a violation of Virginia UPL OPINION 198 approved by the Virginia Supreme Court

S No. 09 -0092599
SlWPC No.

The splitting of the note and the mortgage creates an immediate and fatal flaw in title, making mortgage unenforceable, when mortgage is unenforceable the foreclosure is void and a cloud on title exists in the presence of the court judgment to the contrary Vacating Judgment s procured by Fraud and all the other basic BLACK LETTER LAW flaws in the securitization of loans No Corpus, No Trust,(1). There must be clear intention to create a trust(2). There must be a Trustee/Grantor to create Trust(3). there must be a Trust Corpus or assets ( 4). there must be duties assigned ti Trustee (5). There must be ASCERTAINED or ASERTAINABLE, beneficiaries 0r put another way, there is no such thing as a "STRAW" or "nominal" beneficiary and, without ASERTAINED or ASCERTAINABLE Beneficiaries the trust Instrument is VOID.( 6). Without Promissory note (Asset & Corpus) there can not be a valid trust and without a valid Trust there is no longer need for any security called Deed of Trust. Corpus of the Trust is not there. (7). The Deed of Trust is a Trust Instrument and as such must meet certain criteria to be valid.
SO IF THERE IS NO CORPUS NO TRUST

**SUBSTITUTION OF TRUSTEE(S)**

THIS SUBSTITUTION OF TRUSTEES, made between MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., herein called the Beneficiary, and IMAM MEHBOOB AND SAMEE NIAZ, herein called the Original Borrower(s), being together the Grantors herein; and RECONTRUST COMPANY, N.A AND SAMUEL I. WHITE, P.C., 5040 Corporate Woods Drive Suite 120, Virginia Beach, VA 23462-8523, Substitute Trustee(s), as Grantee, provides as follows:

WHEREAS, by Deed of Trust dated January 26, 2007 and recorded in the Clerk's Office of the Circuit Court of the City/County of LOUDOUN, Virginia, as Instrument No. 20070130 0007790, the Original Borrowers conveyed to SAMUEL I WHITE, Trustee(s), herein called Original Trustee(s), to be indexed as Grantors, certain real property described in said Deed of Trust, to secure an indebtedness in the principal sum of $335,200.00, and also described in said Deed of Trust; and

WHEREAS, the aforesaid Deed of Trust allows the undersigned to remove the trustee(s) and appoint successor trustee(s);

NOW, THEREFORE, by virtue of the authority contained in the aforementioned Deed of Trust, the undersigned does hereby remove the Original Trustee(s) as Trustee(s), and does also hereby remove any Substitute Trustee(s) or trustee(s) who may have been previously appointed in place of the Original Trustee(s), and does hereby appoint RECONTRUST COMPANY, N.A AND SAMUEL I. WHITE, P.C. of the city of Virginia Beach, VA. as Substitute Trustee(s), either of whom may act and said Substitute Trustee(s) shall in accordance with the provisions of said Deed of Trust, succeed to all the title, powers and duties conferred upon the Original Trustee(s) by the terms of said Deed of Trust and by applicable law.

MERS as beneficiary on Deed of Trust is a Portal between two Universes of Commercial Law(Negotiable instrument) and Mortgage Law, There is NO Trust, No Corpus, No Trust. The customized form of Mortgage deed utilized by the Mortgage Electronic Registrations Systems Inc., (MERS), Paragraph C and the grantee clause in particular, is not entitled to any of the statutory mortgagee protections provided. A "Nominee" "Mortgagee" is simply not entitled to the statutory benefits. **Those provisions are strictly construed against MERS putative conveyance since the statutory provisions are in derogation of common law. For example, MERS mortgagee deeds have two entities exercising the same statutory foreclosure powers**

Prepared by RECONTRUST COMPANY, N.A and SAMUEL I. WHITE, P.C
Tax ID # 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-000
Page 1 of 2

Samuel I. White PC cannot be a TRUSTEE as he is involved in fraud of false, fabricated documents and is misleading the court thus committing fraud upon court????

RECONTRUST and Samuel I. White have used fake, fabricated and illegal assignments, where Ms. Julie Webb is wearing too many hats for the FINANIAL & NON-FINANCIAL INSTITUTIONS and her signatures on each assignment are mot identical,Mr. Samuel I. White PC is using these fradulent documents, to mislead the courts and is committing FRAUD upon Courts and upon borrowers, as these **show a pattern of deception, forgery, and even fraud. Mr. Samuel I. White PC** misled the Court about the real party in interest in the case; and engaged in extensive discovery abuse to obstruct revelation of the known falsities in the complaint - a "flagrant abuse of the judicial process" worthy of severe sanctions. See Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332 (11th Cir. 2002). **Dismissal for fraud is appropriate where "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998).** The Court is also empowered to sanction counsel for its role in the litigation misconduct. The Court may also expect counsel's compliance with the **Rules of Judicial Administration,** which provides that **"[t]he signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper [and] that to the best of the attorney's knowledge, information and belief there is good ground to support it…"**

# EXHIBIT-B

# FORECLOSURE NOTICE

# PROOF OF DELIVERY



Foreclosure Notice was sent on 05/26/2010, which was received by the borrower on 05/29/2010

NO NOTICE OF DEFAULT WAS SENT TO THE BORROWER

ReconTrust was substituted as Trustee, which is a VIOLATION of Virginia UPL Opinion 198 approved by the Supreme Court of VIRGINIA

RECONTRUST cannot be TRUSTEE????

VA

TS NO: 09-0092599
SAMEE NIAZ
20278 GLENROBIN TER
ASHBURN, VA 201472371

ReconTrust
P.O. Box 6003882
Dallas, TX 75263-0682

F-2702 (9/08)

USPS - Track & Confirm

http://trkcnfrml.smi.usps.com/PTSInternetWeb/InterLabelInquiry.do



Track & Confirm    FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7187 7930 3131 7555 7457
Service(s): Certified Mail ™
Status: Delivered

Your item was delivered at 12:18 PM on May 29, 2010 in ASHBURN, VA 20147.

Foreclosure Notice was delivered on 05/29/2010

Track & Confirm

Enter Label/Receipt Number.

( Go > )

### Detailed Results:

- **Delivered, May 29, 2010, 12:18 pm, ASHBURN, VA 20147**
- Arrival at Pick-Up-Point, May 28, 2010, 5:43 pm, ASHBURN, VA 20147
- Notice Left, May 28, 2010, 11:01 am, ASHBURN, VA 20147
- Arrival at Unit, May 28, 2010, 8:11 am, ASHBURN, VA 20147

### Notification Options

**Track & Confirm by email**
Get current event information or updates for your item sent to you or others by email. ( Go > )

**Return Receipt (Electronic)**
Verify who signed for your item by email. ( Go > )

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

---

Defendant failed to provide to the plaintiffs with a Notice of Default and Intent to accelerate as required by and/or that complies with Paragraph 22 of the subject mortgage. As a result, Plaintiffs have been denied a good faith opportunity, pursuant to the mortgage and the servicing obligations of the defendant, to avoid acceleration and this foreclosure. Defendant just sent the Foreclosure Notice on 05/29/2010 and fixed the foreclosure Sale date on 06/11/2010. (JUST 10 DAYS)

## DEFENDANTS FAILED TO COMPLY WITH APPLICABLE POOLINGANDSERVICING AGREEMENT LOAN SERVICING REQUIREMENTS

Plaintiffs assert that the special default loan servicing requirements contained in the subject pooling and servicing agreement, to be filed in pertinent part and which is on file at: http://www.secinfo.com , are incorporated into the terms of the mortgage contract between the parties as if written therein word for word and the plaintiffs are entitled to rely upon the servicing terms set out in that agreement.

The defendants failed, refused or neglected to comply with prior to the commencement of this action with the servicing obligations specifically imposed on the defendants by thePSAin many particulars, including, but not limited to Defendants cannot legally pursue foreclosure unless and until Defendants demonstrates compliance with the foreclosure prevention servicing imposed by the subject pooling and servicing agreement under which the defendants owns the subject mortgage loan.

---

Defendant's failure to meet the servicing obligations imposed by thePSA cause the filing by defendants of this foreclosure to be in premature, in bad faith and a breach by defendants of its obligation to plaintiffs implied in the mortgage contract and as specified in writing in thePSA, to act in good faith and to deal fairly with plaintiffs.  Instead, Defendant's servicing failures as set forth herein render defendant's actions in filing this premature foreclosure to be in bad faith and not acceptable loan servicing under the written contracts between the parties which include the mortgage, the PSA incorporated therein or by which plaintiffs are third party beneficiaries thereof and the promissory note. Defendants intentionally failed to act in good faith or to deal fairly with these plaintiffs

# EXHIBIT-C

# FAKE, FABRICATED

# AND

# ILLEGAL ASSIGNMENTS

THIS WAS USED BY MR. SAMUEL I. WHITE in a
Foreclosure Case in ASHBURN Virginia

PLEASE SEE HER
SIGNATURE ON
EXHIBIT-C

She is not Assistant
Secretary For
MERS????

MERS is in Reston
Virginia and not in
Texas

IN WITNESS WHEREOF, the Beneficiary has caused this Substitution of Trustee(s) to be signed
by its duly authorized officer on this ___30th___ day of ___July___ , 2009.

she is signing for Asst. secretary MERS
ON THE OTHER she signs as Assistant Secretary
US Bank National Association
Ms. Julie C. Webb is wearing too many hats for
financial and non financial institutions

By:   MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

Julie C. Webb                              Assistant Secretary

Why this was not
notarized in Reston
Virginia where MERS
office is located. Why it
was notarized in Dallas
Texas????????

Please compare her
signatures with the
instrument/assignment
for Mr. MEHRA

Signatures not
identical?????

STATE OF ___Texas___
COUNTY OF ___Dallas___
On ___8·3·09___ , before me , ___Christopher A. Williams___
___Julie C. Webb___ _____ , personally appeared
___Assistant Secretary___ , known to me (or proved to me on the oath of _____
or through _____
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

These are also fake, I
have seen his signature
in a different way????

Notary Public's Signature

Why this was not
Notarized on
07/30/2009, why it was
notarized after 05 days
(08/03/2009)

CHRISTOPHER A. WILLIAMS
My Commission Expires
June 20, 2012

Great Fraud by Mr.
Samuel I. White and
RECONTRUST
COMPANY owned by
Bank of America

Samuel I. White PC can
not be a Trustee as he
is involved in the Fraud
of preparation of fake,
fabricated and illegal
assignment, When he
is involved in FRAUD,
he can not do his
FIDUCIARY duties
towards the
Borrower????

RECONTRUST
COMPANY,NA is not
resident of Virginia and
can not be TRUSTEE
This is a violation of
Virginia UPL Opinion
198 approved by the
Supreme Court of
Virginia

Mr. Samuel I. White are
acting as a vehicle for
this FRAUD and is
working with the Joint
Venture with the LPS,
who has admitted this
documents Fraud in
their Annual Report 10
K on 02/23/2010 filed
before the SEC as per
SEC file # 00`1-34005
dated 02/23/2010.

Prepared by RECONTRUST COMPANY, N.A. and SAMUEL I. WHITE, P.C.
Tax ID # 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-000
Page 2 of 2

VASUB (12/08)

EXHIBIT-D

# EXHIBIT-D

# FAKE, FABRICATED

# AND

# ILLEGAL ASSIGNMENTS



Please see the signature of Julie C. Webb on the other assignment

Signatures are not identical????? FRAUD

she is signing for Asst. secretary U.S. Bank National Association
ON THE OTHER she signs as Assistant Secretary MERS
Ms. Julie C. Webb is wearing too many hats for financial and non financial institutions

PLEASE SEE HER SIGNATURE ON EXHIBIT-D

Notary's Misconduct, renders this assignment VOID

This Notary Shameca L. Harrison was already caught by various courts in Notary's Misconduct

She uses her office address of RECONTRUST

Please compare her signatures with the instrument/assignment for Mr. SAMMI's Assignment

Signatures not identical?????

Why this was not Notarized on 09/23/2009, why it was notarized after 10 days (10/02/2009)

Great Fraud by Mr. Samuel I. White and RECONTRUST COMPANY owned by Bank of America

RECONTRUST COMPANY,NA is not resident of Virginia and can not be TRUSTEE This is a violation of Virginia UPL Opinion 198 approved by the Supreme Court of Virginia

Mr. Samuel I. White are acting as a vehicle for this FRAUD and is working with the Joint Venture with the LPS, who has admitted this documents Fraud in their Annual Report 10 K on 02/23/2010 filed before the SEC as per SEC file # 00`1-34005 dated 02/23/2010.

EXHIBIT-C

Samuel I. White PC can not be a Trustee as he is involved in the Fraud of preparation of fake, fabricated and illegal assignment, When he is involved in FRAUD, he can not do his FIDUCIARY duties towards the Borrower????